IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Shannon S.,[1]

Plaintiff,

v.

Martin O'Malley,

Defendant.

C/A No. 0:22-cv-04496-SAL

**ORDER**

This matter is before the court for review of the November 28, 2023 Report and Recommendation of United States Magistrate Judge Paige J. Gossett (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 15.] In the Report, the Magistrate Judge recommends the Commissioner's final decision denying Plaintiff's claim for Social Security disability benefits be affirmed. *Id.* Plaintiff filed timely objections to the Report. [ECF No. 16.] Defendant replied. [ECF No. 17.] For the reasons outlined herein, the court adopts the Report and affirms the Commissioner's decision.

**STANDARD OF REVIEW**

The scope of federal court review under 42 U.S.C. § 405(g) is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended due to significant privacy concerns in social security cases that federal courts refer to claimants only by their first name and last initials in court opinions.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court. The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1). In the absence of specific objections to portions of the Report, this court is not required to explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). It must "only satisfy itself that there is no clear error on the face of the

record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

Plaintiff objects to the magistrate judge's finding that the Administrative Law Judge ("ALJ") properly evaluated an opinion from her treating provider, Nurse Practitioner Emily West ("NP West"). The court reviews NP West's opinion, the ALJ's decision, the magistrate judge's Report, and Plaintiff's objections below.

<u>Nurse Practitioner West's Opinion</u>

According to the record, Plaintiff's counsel or someone working on his behalf interviewed NP West and memorialized the interview in a letter NP West subsequently signed. *See* Tr. at 1077–78. In her statement, NP West indicated she had treated Plaintiff for ten years and had seen her every four to six weeks since 2016. Tr. 1077. NP West reported she was treating Plaintiff "primarily for the pain she experiences in her low back, her knees, and her hip." *Id.* But Plaintiff also had trouble with her breathing. *Id.* Plaintiff was on Amitriptyline and Diclofenac for her pain. *Id.* NP West detailed lumbar MRIs from 2015 and 2019 that showed degenerative disk disease and indicated the imaging was "consistent with [Plaintiff's] symptoms and [NP West's] medical opinion about her functional limitations." *Id.* NP West also noted Plaintiff had hip pain, and an MRI showed a tear in the labrum of her right hip. *Id.* Additionally, Plaintiff had chronic knee pain and "was recommended to have a knee replacement by an orthopedist a few years back . . . [but] was told that she was not a candidate for that due to her weight problems." *Id.* NP West described Plaintiff's gait as antalgic and opined her "cane is medically necessary." *Id.* As for other limitations, NP West stated Plaintiff would be limited to sedentary work, with occasional reaching bilaterally, and she would be restricted to lifting no

more than five pounds and not on a repetitive basis. *Id.* NP West noted Plaintiff was morbidly obese, weighing 403 pounds with a BMI of 60. *Id.* According to NP West, "[t]herefore, it has been difficult for her to get surgery for her problems because the surgeons have told her that she has to lose weight to be fit for surgery." *Id.* At the same time, because of her limited mobility, Plaintiff had difficulty losing weight. *Id.* Finally, NP West opined Plaintiff has the following functional limitations:

> She would need to change positions every 15 minutes or so due to her back pain. She would miss more than 3 days of work per month due to her chronic back pain and her occasional difficulty with breathing. She would be off task more than 15% during the working day due [to] a combination of pain from her back, hip, and knees.

*Id.* NP West indicated she found Plaintiff to be very credible. *Id.*

<u>The ALJ's Decision</u>

In his decision, the ALJ identified the following residual functional capacity ("RFC") for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes or scaffolds; kneel, or crawl; the claimant can occasionally climb ramps or stairs, stoop, or crouch; the claimant can occasionally balance with a hand held assistive device (device is needed to ambulate to the work station, but is not needed at the work station), and can tolerate occasional right overhead reaching; the claimant can tolerate occasional exposure to excessive noise, and environmental irritants such as fumes, odors, dusts, and gases; the claimant cannot tolerate any use of moving machinery, or exposure to unprotected heights; the claimant is limited to occupations which do not involve working beneath bright, flashing lights (does not include normal exposure to neon lights in a working environment); the claimant's work is limited to simple, routine, and repetitive tasks, the individual can perform these tasks for two hour blocks of time with normal rest breaks during an eight hour work day; with only occasional interaction with the public and coworkers.

Tr. 21–22. As part of the ALJ's assessment of Plaintiff's RFC, the ALJ considered NP West's statement but ultimately found it unpersuasive:

4

> There is a treating source statement provided by Nurse Practitioner West which is an attorney prepared statement which is unpersuasive and is not supported by the medi[c]al evidence.  The statement limits the claimant to sedentary work and lifting no more than 5 pounds, with being off task 15 percent of the day and missing 3 or more days of work per month, which is extreme and is simply not consistent with the totality of the medical evidence showing that the claimant has not been recommended for surgery and has only received very conservative treatment.  The[] underlying objective evidence fails to show such extreme limitations such as being off task 15 percent of the day and missing 3 or more days or work per month.

Tr. 24.

<u>The Report</u>

In her Report, the magistrate judge found Plaintiff failed to demonstrate that the ALJ's evaluation of NP West's opinion was unsupported by substantial evidence or based on an incorrect application of the law.  [ECF No. 15 at 7.]  The court agrees with the magistrate judge's reasoning.

As an initial matter, the magistrate judge appropriately noted the ALJ was required to consider the medical opinions of record in accordance with 20 C.F.R. § 404.1520c, which provides that the adjudicator is not to defer to or give any specific weight to a medical opinion based on its source. 20 C.F.R. § 404.1520c(a). The ALJ must consider in the decision how persuasive he found all the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c). However, he is only required to specifically articulate how he considered the supportability and consistency factors because they are considered the most important factors in assessing the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(a), (b)(2). Applicable to the supportability evaluation, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical

5

opinion . . . will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating the consistency factor, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's conclusions as to the supportability and consistency of a medical opinion must be supported by substantial evidence.

Plaintiff's Objections

Plaintiff's objections are not clearly enumerated, but the court gleans five separate objections to the Report, which the court addresses in turn below.

First, Plaintiff argues the ALJ improperly considered the fact that NP West's statement was prepared by Plaintiff's lawyer. [ECF No. 16 at 1.] Plaintiff raised this same argument to the magistrate judge. *See* ECF Nos. 10 at 36–37; 15 at 5. The magistrate judge rejected the argument, and court agrees with her analysis: "There is no dispute that counsel prepared the statement for West to sign following an interview, and further, there is no indication that the ALJ found these opinions unpersuasive on that basis." [ECF No. 15 at 5.] Plaintiff now argues "it can't be said that the ALJ was simply noting the source of each opinion" since the ALJ did not identify the origin of the state agency opinions. [ECF No. 16 at 1.] Further, according to Plaintiff, "while the ALJ may have 'accurately described the statement from West,' . . . we cannot assume that this fact had no bearing on the evaluation of West's opinion." *Id.* The court overrules Plaintiff's objection. As stated by the magistrate judge, there is no indication that the ALJ discounted NP West's opinion because it was prepared by Plaintiff's counsel. And Plaintiff has offered no support for her contention that "we cannot assume that this fact had no bearing on the evaluation of West's opinion." [ECF No. 16 at 1.] However, even if origin of the statement factored into the ALJ's analysis, Plaintiff has not shown it was error where other reasons

(discussed below) were also offered for finding NP West's opinion unpersuasive. *See Goff v. Saul*, C/A No. 2:18-cv-03313-TLW-MGB, 2020 WL 2476814, at *9 (D.S.C. Jan. 28, 2020) ("[T]he ALJ may consider the fact that a medical opinion was solicited by counsel in combination with other factors in deciding to give that opinion less weight." (citing *Sims v. Colvin*, NO. 6:12-CV-3332-DCN, 2014 WL 793065, at *13 (D.S.C. Feb. 24, 2014))), *adopted by* Civil Action No. 2:18-cv-03313-TLW, 2020 WL 1303138 (Mar. 19, 2020).

As explained in the Report, the magistrate judge found Plaintiff failed to demonstrate the ALJ's decision was not supported by substantial evidence where the record as a whole revealed how the ALJ considered the medical evidence. [ECF No. 15 at 5.] The magistrate judge explained, "This is not a case where the court cannot tell which limitations the ALJ did not credit." *Id.* Plaintiff objects to this reasoning, arguing "the Magistrate Judge fails to appreciate that elsewhere in the ALJ's decision, the ALJ summarized a mixed [sic] of findings; many of which supported Ms. West's opinions." [ECF No. 16 at 2.] But Plaintiff's objection is reductive—the ALJ did more than just summarize a mix of findings. He reconciled the conflicting evidence. *See* Tr. 22–25. Further, it is no surprise there are a mix of findings, but what the ALJ must do is "'build an accurate and logical bridge from the evidence to his conclusion.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). As explained in the Report, the ALJ did so in this case. Plaintiff's objection is, thus, overruled.

Plaintiff next argues that the ALJ failed to articulate how he evaluated the supportability and consistency of NP West's opinion. Plaintiff points to the Report's notations that, despite the opinion being deemed unpersuasive, some of NP West's opined limitations were included in the RFC. But Plaintiff counters that "just because the ALJ's RFC may have matched some of Ms.

West's opinion, this does not mean that the ALJ properly evaluated all of Ms. West's opinions. And the ALJ did not indicate that he found West's opinion partially persuasive." [ECF No. 16 at 2.] The court disagrees with Plaintiff's assessment. The ALJ highlighted specific limitations he found to be extreme and offered an explanation for why he reached that conclusion. Furthermore, when the discussion about NP West's opinion is considered in context with the rest of the decision, it is evident the ALJ drew a logical bridge between the evidence and his conclusions—both the particular the conclusions regarding NP West's opinion and the ultimate determination of Plaintiff's RFC. *See Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion . . . ." (internal citations omitted)). The court overrules this objection as well.

In his explanation of why he found NP West's opinion unpersuasive, the ALJ stated some of the limitations she offered were "extreme and . . . simply not consistent with the totality of the medical evidence showing that the claimant has not been recommended for surgery and has only received very conservative treatment." Tr. 24. In her briefing, Plaintiff identified places in the medical records that mention surgery. *See* ECF No. 10 at 37. But, as pointed out by the magistrate judge, these records indicate that "Plaintiff in fact has not been recommended for surgery until she loses weight, and instead injections have been recommended." [ECF No. 15 at 6.] For instance, on July 16, 2016, NP West saw Plaintiff for wheezing and coughing, and, in the problem list/past medical history, she noted "neurosurgeon has recommended a medic alert bracelet and is unable to perform surgery due to morbid obesity, he recommended bariatric surgery but pt was told her insurance does not cover this procedure and the bariatric surgeon has

advised her to lose 25–30 pounds before he could perform the surgery[.]" Tr. 856. A few months later, Plaintiff was seen by Keith Schiff, M.D., at Pain Management Associates for lower back pain. Tr. 389. In his notes, Dr. Schiff referenced MRI imaging that showed significant L4 stenosis and that Plaintiff "has undergone L4 transforaminal epidural steroid injections with good efficacy but waning duration of action." *Id.* Further, he wrote, "She would likely require surgical correction however given her obesity would not be a candidate at this time. She is holding on this at this time if she was told she could not have a child for 2 years after the bariatric surgery and would like to have a child before she undergoes bariatric surgery now." *Id.* Dr. Schiff continued Plaintiff on Lyrica and encouraged her to be as active as possible and avoid bed rest for more than three to four days. Tr. 390. On June 21, 2019, Plaintiff was seen by Amy S. Hunt, P.A.-C, at Piedmont Orthopaedic Associates for lower back pain. Tr. 909. As part of the assessment and plan, PA Hunt noted, "[u]ltimately we discussed that she would not be a surgical candidate due to her obesity. I discussed with her weight loss options and bariatric surgery. I do not feel an MRI scan is needed at this time as she would not be a surgical candidate. . . . My recommendation would be referral to pain management setting for evaluation and treatment and injections." *Id.* The court agrees with the magistrate judge—Plaintiff was not recommended for surgery due to her weight. *See* ECF No. 15 at 6. Plaintiff characterizes this as a post hoc qualifier, but the ALJ, too, noted Plaintiff was not a surgical candidate due to her obesity. Tr. 23. Additionally, the ALJ cited records from Southeastern Neurological and Spine where Stephen Ray Gardner, M.D., provided the following assessment of Plaintiff's back pain:

> I explained to the patient that her lumbar MRI shows multiple levels of degenerative discs and inflamed facet joints, which are hinge joints responsible for flexion and extension of the spine. The joint inflammation and disc degeneration causes back pain. The MRI shows multiple levels of stenosis, or narrowing, or the spinal canal. The MRI does not show obvious nerve compression due to the stenosis.

> Spinal surgery is a last resort indicated for intractable pain and/or weakness. The patient presents with arthritic lumbar pain with associated sciatica bilaterally. I explained that spinal surgery is not indicated for arthiritic pain. I do not recommend spinal surgery due to the lack of spinal instability or neural compression. I recommend continued conservative treatment with anti inflammatories.

Tr. 781. Although some records indicated surgery *might be* an option were it not for Plaintiff's weight, none of Plaintiff's providers recommended surgery. Dr. Gardner called spinal surgery the "last resort" for Plaintiff's back problems. The ALJ accurately described the medical records—"the totality of the medical evidence show[s] that the claimant has not been recommended for surgery and has only received very conservative treatment." As such, Plaintiff's objection is overruled.

Finally, Plaintiff objects to the magistrate judge's finding that her case is not similar to *Fraley v. Kijakazi*, Civil Action No. 5:21-03849-KDW, 2022 WL 17985967 (D.S.C. Dec. 29, 2022), a case where the court reversed and remanded the decision of the Commissioner because the ALJ did not adequately explain her finding that a medical opinion was somewhat persuasive. But the court fully agrees with the magistrate judge's reasoning and conclusion. *See* ECF No. 15 at 6–7. As aptly stated by the magistrate judge, "[T]he ALJ in this case identified not only which limitations were inconsistent with and/or unsupported by the record, but also identified by way of example support for his determination that portions of West's opinion were inconsistent with the records." *Id.* Plaintiff's arguments to the contrary are unavailing. As explained in the Report and in this order, the ALJ adequately explained his finding that NP West's opinion was unpersuasive. Accordingly, Plaintiff's objection is overruled.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record in this case, the court adopts the Report and affirms the Commissioner's decision.

IT IS SO ORDERED.

February 20, 2024
Columbia, South Carolina

Sherri A. Lydon
United States District Judge